IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIAN TURNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-1971-G-BN |
| | § | |
| WHATABURGER, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Julian Turner filed a *pro se* Complaint for Damages [Dkt. No. 3] against Whataburger, his employer (or possibly former employer), and several individuals identified by their first names, all of whom appear to have been managers while Turner worked at Whataburger.

Senior United States District Judge A. Joe Fish referred Turner's lawsuit to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

And, after reviewing the complaint, the undersigned questions whether there is subject matter jurisdiction and, given the circumstances of this case, enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action for lack of subject matter jurisdiction.

These findings and conclusions provide Turner notice as to the jurisdictional deficiencies. And the ability to file objections to the undersigned's recommendation that this case be dismissed for lack of jurisdiction (further explained below) offers

Turner an opportunity to establish to the Court (if possible) that it does indeed have subject matter jurisdiction.

## Background

Turner seeks monetary damages and "the implementation of a Program and Training to protect all current and future WHATABURBER Employees from [a] total lack of professionalism and concern by WHATABURGER Corporation and all of it's associated Managers, General Managers, Team Leaders, Supervisors, and any and all other so positioned WHATABURGER Staff Administrative or otherwise" based on the constitutional violations he claims – "Due Process of the Law, and U.S. Constitutional Rights of Plaintiff including but not limited to Plaintiffs Fourth, Eighth, and Fourteenth Amendment Rights protecting Plaintiffs Fourth Amendment Rights and Eighth Amendment Rights to be free from Cruel and Unusual Punishment without Due Process, which most certainly this wantonly cruel treatment of Plaintiff." Dkt. No. 3, ¶¶ 22, 23; *see also id.* at 12 (civil cover sheet identifying as the causes of action: "1983 Civil Rights Act, Hostile Work Environment, Abuse of Elderly, Abuse of Protected Veteran, Civil Rights Violations").

Turner alleges the following facts to support his claims:

> Whereas Plaintiff states that as a direct result of the illegal actions by WHATABURGER jointly and severally in collusion with Manager Marasol (lnu), Laura (Lnu), and General Manager Ydria (lnu), and others both known and unknow to Plaintiff, did knowingly and intentionally conspire and otherwise confederate to predicate the unemployment of Plaintiff, therein causing Plaintiff to be financially destitute and therein without any source or means to pay for Court Filing Fees, Court Costs, and Prosecution of this cause, Plaintiff herein respectfully states he is now Indigent without any means nor expected means to pay for Court Costs and Filing Fees and respectfully asks the

Court to waive Filing Fees, Court Costs, and U.S. Marshal Service Fees in the interest of Justice and Due Process of the law.

Whereas Plaintiff states that WHATABURGER jointly and severally by and through and confederated with Marasol (lnu), Laura (lnu), Andrea (lnu), along with others unknown to Plaintiff, did knowingly and willingly foster and condone a Hostile Work Environment and then further jointly and severally conspire and otherwise collude to make the work environment so hostile and miserable that Plaintiff was forced to leave.

Whereas Plaintiff reserves the right to amend, brief, supplement, and otherwise change and add witnesses, documents, and other vital and relevant information to this matter up to the commencement of trial by jury.

Whereas Plaintiff, an Honorably Discharged and Disabled Viet Nam Veteran (Protected), being a Retired Senior Citizen (68 years old), sought a means to supplement his social security and disability benefits to provide and treat his grandchildren and greatgrandchildren.

Whereas Plaintiff applied for and obtained employment at WHATABURGER Unit 635 in Lancaster, Texas, and his immediate supervisor and trainer was Manager Marasol (Lnu). *NOTE: It's important to Note that Plaintiffs original and initial schedule was for the hours 9am until 2pm, but immediately after only 3 days of video (out of about a week and a half of videos), Plaintiff was assigned the Position of Cashier/Order Complete/Deliver in Window Number 2, and Plaintiffs Schedule was changed to 7am to 3pm.

Whereas within 2-3 days of successful Cashier Training and no problems, another female manager-in-training (Laura H/F [Lnu] began harassing Plaintiff, continually impeding his physically passing from point to point, purposely sending wrong, incorrect, incomplete, orders to Plaintiffs P.O.S. (Point Of Sale) Terminal [Which is utilized exclusively for Plaintiff to process, complete, fulfill, and collect payment and deliver finished customers orders], and same resulted in Plaintiff appearing to 'mess up' Orders, when in fact, same was predicated solely by Manager Laura to cause confusion and otherwise both to embarrass Plaintiff and otherwise cast aspersions on Plaintiff.

Whereas Plaintiff was forced to inform Manager Marisol of the rudeness and disrespect of Manager Laura in addition to how she was intentionally messing up Orders and impeding Plaintiffs ability to move from point to point.

Whereas Manager exhibited total indifference and deliberate indifference by crassly stating to Plaintiff: " ... She's (Manager Laura) a 'Manager-In-Training' and she won't be here long ..." and left it 'Open-Ended' with absolutely no resolution.

Whereas Plaintiff was forced to 'work around the intentional and

deliberate blocking of his path, and continually having to call Manager Marisol to help him with Orders intentionally and deliberately messed up by Manager Laura all the while being made to look incompetent and inept to both customers, Whataburger Team Members and Manager Marisol.

Whereas on Thursday, August 18th, 2022, as previously described in the foregoing statements, immediately after Plaintiff began working in his assigned position, Manger Laura immediately set in being rude, disrespectful, blocking Plaintiffs passage, sending messed up orders, and incorrect orders, and being extremely aggressively bumping Plaintiff to the point Plaintiff had yet again to contact Manager Marisol ... and when she exhibited a total disinterest in the matter, and, Plaintiff was becoming more frustrated and upset to becoming a bit louder, Manager Mike (who at this point didn't know anything about the ongoing harassment of Plaintiff by Laura as Manager Mike worked nights, and was in fact at that point finishing up his night shift, came out, listened to Plaintiff as he again described in detail everything Manager Laura was doing, had done, and continued doing. Immediately Manger Mike, went and got Manager Laura, and moved her to Window 1 after having a serious talk with her. *NOTE: It is very important to note that after Manager Mike chastised Manager Laura and moved her to Window 1, Plaintiff didn't have any more incorrect or incomplete customer orders come to his P.O.S. Terminal and, Plaintiff was able to properly and promptly expedite and fulfill and deliver customers orders, and experienced no other problems thru out the rest of his regularly scheduled shift.

Whereas Friday Morning, August 26th, on Plaintiffs scheduled 'OFF DAY' for his Veterans Hospital Scheduled Ophthalmological Surgery Appointment, as Plaintiff was preparing to leave home for the V.A. Hospital, Manager Andrea called Plaintiffs wife's phone (alternate contact phone number), possibly because Plaintiff didn't answer his phone, and spoke very rudely to Plaintiffs wife demanding to know where Plaintiff was and why he wasn't at work.

Whereas Plaintiffs wife instead of arguing with Manager Laura, Plaintiffs wife simply handed Plaintiff the phone. Plaintiff explained he was 'OFF', that he'd requested 'OFF' and had provided documentation to the General Manager. Yet, Manager Andrea continued to berate Plaintiff and tell him rudely: "... Well, You are scheduled Monday thru Friday 7 am 'til 3 pm and you are supposed to be here ..." [sic]. Plaintiff simply stated: " ... I have a scheduled surgical appointment...", have a nice day, and hung up the telephone.

Whereas on Tuesday, August 23rd, 2022, Plaintiff chanced to speak with General Manager Ydria (lnu) about still not having necessary additional Uniform Shirts (had been over 2 weeks), and, about

- 4 -

Plaintiff being unable to login and access 'HotSchedule' to set and review his work schedule, and, about the incident with Manager Laura, and, the fact that the coming Friday, August 26th, 2022, Plaintiff had a scheduled Surgical Appointment at the V.A. Hospital and, provided the General Manager with V.A. Hospital Appointment Verification Documentation. The General Manager didn't comment on the incident with Manager Laura.

Whereas on Wednesday, August 24th, 2022, Plaintiff arrived at work, clocked in as usual, and immediately reported to his assigned work station (Window 2) as Cashier Order Facilitator/Deliverer, and for approximately 30-40 minutes orders proceeded normally without any incidents, no mix-ups, no problems whatsoever.

Whereas approximately 10 minutes afterward, Manager Laura positioned herself at the 'P.O.S.' (Point Of Sale) Terminal immediately adjacent (less than a foot away from Plaintiffs P.O.S. Terminal and Window Work Station), and, then began continually intentionally bumping (forcibly) into Plaintiff, viciously pushing past him, impeding Plaintiff's necessary movements to facilitate and complete customer order deliveries, and sending wrong and otherwise messed up orders to Plaintiffs P.O.S. Terminal while also vociferously demanding Plaintiff "... PARK 'EM ..." (Move Customers Cars Down whose Orders were still cooking and otherwise being prepared), thusly intentionally preventing Plaintiff from completing and delivery customers orders efficiently as he had been doing before Manager Laura arrived.

Whereas Plaintiffs ability to carry out his work assignment was so impaired that Plaintiff yet again had to interrupt his work and talk with Manager Marisol. Before Plaintiff could finish explaining what Manager Laura was doing to impede Plaintiffs ability to perform his job, Manager Marisol rudely interrupted Plaintiff and stated vociferously: " ... Julian ... I'm Not Playing With You Today .... YOU Can Go Home ... ", at which point, Plaintiff simply said: " ... Okay ...", Clocked Out, and left the premises to wait outside for his wife to come 30+ miles from her job to pick Plaintiff up.

Whereas less than an hour after Plaintiff got home (circa about 8:45 am), the Whataburger General Manager Ydria called Plaintiff and asked what happened. Plaintiff explained in concise detail, and, that he was considering making a complaint and commencing legal action, to which the General Manager Ydria said: "... No, No, No ... Don't Do That.... I Have a Meeting until 5 pm, but then I will 'Fix' it ... and it won't ever happen again ...."

Whereas after 5 days had passed and it being Monday, August 29, 2022, yet another regularly scheduled work day for Plaintiff and still no call from the General Manager nor a resolution to the matter, Plaintiff then called Whataburger Corporate Offices to make a complaint to

Human Resources who professed/claimed to know nothing about the incident and stated: " .... Someone will contact you …", which still no one has.

Whereas to date, Plaintiff called WHATABURGER Corporate to inquire and further complain, and reached a 'H.R' individual, provided the Complaint Number, and that individual stated: " ... Well, I don't know what's going on, but I'll send this (the complaint) to our 'Escalation Team' and someone will contact you, and to date (of this filing), no one has contacted Plaintiff, this gives rise to the total lack of empathy, professionalism, and total deliberate indifference towards Plaintiffs plight.

Whereas this day, Wednesday August 31, 2022, Plaintiff has already lost a week and a day of work, 37 ½ Hours at $12 @ Hour Totaling $450.00 in actual financial loss,

*Id.*, ¶¶ 2-21.

## Legal Standards

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) ("Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims.").

They must therefore "presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Correspondingly, all federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-

84 (1999) ("Subject-matter limitations ... keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." (citations omitted)).

Turner chose to file this lawsuit in federal court and, by doing so, undertook the burden to establish federal jurisdiction. *See Butler v. Dall. Area Rapid Transit*, 762 F. App'x 193, 194 (5th Cir. 2019) (per curiam) ("[A]ssertions [that] are conclusory [ ] are insufficient to support [an] attempt to establish subject-matter jurisdiction." (citing *Evans v. Dillard Univ.*, 672 F. App'x 505, 505-06 (5th Cir. 2017) (per cuiam); *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001))).

And, if Turner does not, this lawsuit must be dismissed. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Because federal jurisdiction is not assumed, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)); *see also MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." (quoting *Getty Oil*, 841 F.2d at 1259)).

Under their limited jurisdiction, federal courts generally may only hear a case

if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332.

In cases invoking jurisdiction under Section 1332, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a), (b). This amount "is determined by the amount of damages or the value of the property that is the subject of the action." *Celestine v. TransWood, Inc.*, 467 F. App'x 317, 319 (5th Cir. 2012) (per curiam) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). And, "[f]or diversity purposes, state citizenship is synonymous with domicile. A change in domicile requires: '(1) physical presence at the new location and (2) an intention to remain there indefinitely.'" *Dos Santos v. Belmere Ltd. P'ship*, 516 F. App'x 401, 403 (5th Cir. 2013) (per curiam) (citations omitted); *see also Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 797-98 (5th Cir. 2007) ("In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship.... Domicile requires the demonstration of two factors: residence and the intention to remain." (citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954))).

"The basis for diversity jurisdiction must be 'distinctly and affirmatively alleged.'" *Dos Santos*, 516 F. App'x at 403 (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009)). The United States Court of Appeals for the Fifth Circuit has therefore held "that a 'failure to adequately allege the basis for diversity jurisdiction mandates dismissal.'" *Id.* (quoting *Stafford v. Mobil Oil Corp.*, 945 F.2d

803, 805 (5th Cir. 1991)).

Under Section 1331, federal question jurisdiction "exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)); *see also In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) ("A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.'" (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995))).

The "'creation' test … accounts for the vast bulk of suits under federal law." *Gunn*, 568 U.S. at 257 (citation omitted). But

> "a federal court [is also] able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." That is to say, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

*Perez v. Se. SNF, L.L.C.*, No. 21-50399, 2022 WL 987187, at *3 (5th Cir. Mar. 31, 2022) (per curiam) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005), then *Gunn*, 568 U.S. at 258).

## Discussion

Examination of the allegations set out above – the totality of the facts alleged by Turner – show that Turner has not distinctly and affirmatively alleged a basis for

diversity jurisdiction.

Turning to Section 1331, then, "[t]he applicable test for determining jurisdiction on the face of the pleadings is not whether the plaintiffs could actually recover, but whether the federal claim alleged is so patently without merit as to justify the district court's dismissal for want of jurisdiction." *Suthoff v. Yazoo Cnty. Indus. Dev. Corp.*, 637 F.2d 337, 340 (5th Cir. Unit A Feb. 1981) (citing *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59 (1978)).

Put another way, "[s]ome claims are 'so insubstantial, implausible, ... or otherwise completely devoid of merit as not to involve a federal controversy.'" *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1007 (5th Cir. 2019) (quoting *Oneida Indian Nation of N.Y. v. Oneida Cnty.*, 414 U.S. 661, 666 (1974)).

And "a complaint that alleges the existence of a frivolous or insubstantial federal question is not sufficient to establish jurisdiction in a federal court." *Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257, 257 (5th Cir. Unit A Mar. 1981) (citing *Olivares v. Martin*, 555 F.2d 1192, 1195 (5th Cir. 1977); *Hagans v. Levine*, 415 U.S. 528, 538-39 (1974)); *see also Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d 338, 342 (5th Cir. 1977) (a claim "must be more than frivolous to support federal question jurisdiction").

In sum, a complaint that simply points to a federal law does not provide for subject matter jurisdiction under Section 1331 where the complaint lacks factual allegations showing how the federal law applies to a plaintiff's claim.

Turner explicitly alleges that the defendants violated his constitutional rights,

and he invokes 42 U.S.C. § 1983. "A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting, in turn, *United States v. Classic*, 313 U.S. 299, 326 (1941))).

Turner alleges no facts to support that any defendant acted with the authority of state law. So he has not alleged federal question jurisdiction based on Section 1983. *See Mitchell v. Clinkscales*, 253 F. App'x 339, 340 (5th Cir. 2007) (per curiam) ("[A]lthough Mitchell argues that Clinkscales is liable under 42 U.S.C. § 1983, Mitchell does not allege facts demonstrating that Clinkscales acted under color of state law; thus, Mitchell failed to plead and establish subject-matter jurisdiction based on the existence of a federal question. [And t]he district court was required to dismiss the complaint." (citation omitted)); *Harrington v. City of Shiner, Tex.*, No. 6:20-cv-00039, 2021 WL 4503013, at *5 (S.D. Tex. Sept. 30, 2021) ("Harrington failed, not in stating conclusory or vague facts to support his Section 1983 claim, but in showing that the Section 1983 claim was not frivolous, insubstantial, or patently

without merit given the facts that he *did* allege. Thus, the district court concluded that the claim did not raise a federal question given the lack of a foundation for the Section 1983 claim – that is, an alleged constitutional rights violation – as well as the lack of any factual allegations that could even imply the applicability of the statute." (discussing prior dismissal by the court; citations omitted)).

Similarly, insofar as Turner alleges that he has been subjected to a "Hostile Work Environment," *see* Dkt. No. 3, ¶ 2 (alleging that the defendants "knowingly and willingly foster and condone a Hostile Work Environment" and "conspire and otherwise collude to make the work environment so hostile and miserable that [he] was forced to leave"), Turner alleges no facts to base federal question jurisdiction on a federal statute such as Title VII.

That is, while Turner alleges that other employees acted rudely or disrespectfully toward him and that he feels that Whataburger has shown a "total lack of empathy, professionalism, and total deliberate indifference towards [his] plight," Dkt. No. 3, ¶¶ 8, 11-13, 17, 20, "Title VII does not protect opposition to all forms of unscrupulous conduct," *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) (citation omitted).

Nor does it "set forth 'a general civility code for the American workplace.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting, in turn, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998))).

Instead, Title VII prohibits discrimination based on "race, color, religion, sex,

or national origin." 42 U.S.C. § 2000e-2(a)(1).

And, because Turner fails to allege facts necessary to sustain a claim that he suffered discrimination based on any of these attributes – or any other attribute protected by other federal statutes, such as older age – there is no basis to find federal question jurisdiction based on Turner's employment-related allegations. *See Smith v. U.S. Air Force*, 566 F.2d 957, 958 (5th Cir. 1978) (per curiam) ("Nowhere in his complaint, or elsewhere in the record, did appellant allege discrimination on the basis of race, color, religion, sex, or national origin, a prerequisite to relief under 42 U.S.C.A. s 2000e et seq. Accordingly, this statute did not furnish the court below with subject matter jurisdiction.").

## Recommendation

The Court should dismiss this case for lack of subject matter jurisdiction.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 16, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE